1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   JASON DEBAUGH, an individual, )
                                    )
12                   Plaintiff,     )
                                    )    No.  CV-08-1285-HU
13        v.                        )
                                    )
14   GREYHOUND LINES, INC., a       )
     Delaware corporation,          )    FINDINGS & RECOMMENDATION/
15                                  )    ORDER
                                    )
16   ─────────────────────────────)
                     Defendant.     )

17   E.J. Simmons
     Attorney at Law
18   621 S.W. Morrison Street, Suite 1300
     Portland, Oregon 97205
19
20        Attorney for Plaintiff

21   Roman D. Hernandez
     Sharon E. Rye
     SCHWABE, WILLIAMSON & WYATT, P.C.
22   1500-2000 Pacwest Center
     1211 S.W. Fifth Avenue
23   Portland, Oregon 97204

24        Attorneys for Defendant

25   HUBEL, Magistrate Judge:

26        Plaintiff Jason DeBaugh brings this negligence and negligent

27   entrustment action against defendant Greyhound Lines, Inc., for

28   injuries sustained when a bus driven by defendant's then-employee

1 - FINDINGS & RECOMMENDATION/ORDER

collided with plaintiff who was on a motorcycle. Defendant moves
for summary judgment only as to the negligent entrustment claim.
Defendant also moves to strike the declaration of plaintiff's
expert submitted by plaintiff in opposition to the summary judgment
motion.

    I recommend that the summary judgment motion be granted.
Because I recommend granting the summary judgment even when
plaintiff's expert's declaration is considered, I deny the motion
to strike the declaration as moot.

BACKGROUND

    On June 29, 2007, Dan O'Connor, a former Greyhound driver, was
involved in an accident with plaintiff when O'Connor was on duty.
The accident occurred when O'Connor turned left across oncoming
traffic and hit plaintiff who was proceeding north on Northwest
Broadway.

    O'Connor began working for defendant as a bus driver in
February 2006.  Tom Salazar, Operations Manager for defendant's
Portland Terminal, reviewed O'Connor's application and hired him
after (1) noting plaintiff's sixteen years of commercial driving
experience for Intermountain Transportation, (2) conducting a
background investigation which revealed that O'Connor had no
history of traffic citations, and (3) conducting an interview.

    O'Connor also successfully passed a drug and alcohol
urinalysis and a medical examination.  The physician who conducted
the medical exam identified no medical issues affecting O'Connor
such as sleep apnea, sleep narcolepsy, or insomnia, nor any other
issues related to chronic fatigue that could have affected
O'Connor's driving ability.  Additionally, O'Connor received

2 - FINDINGS & RECOMMENDATION/ORDER

1  periodic  medical  exams  as  part  of  his  ongoing  employment  with
2  defendant, and at no time did any physician ever identify any type
3  of sleep disorder that would have affected O'Connor's driving.  No
4  issue  related  to  chronic  fatigue  was  ever  identified  in  any
5  additional medical exam.

6      During his initial training, O'Connor received 180 hours of
7  instruction including driving Greyhound buses.  He was also trained
8  utilizing the "Smith System," which is a defensive driving program
9  taught by almost all of the major commercial motor carriers in the
10 United States and Canada.

11     Salazar states that during the training period, O'Connor had
12 some  initial  problems  maneuvering  the  bus  with  a  left  hand  turn.
13 While on Greyhound property and not on a public street, and with no
14 passengers on the bus, O'Connor scraped a post while making a sharp
15 left  turn.  O'Connor was given extra training on making left turns.
16 After the extra training, Salazar found O'Connor to be a competent
17 driver and allowed him to continue with his general training, which
18 O'Connor ultimately completed successfully.

19     During his employment with defendant, O'Connor received no
20 traffic  citations,  including  no  citation  for  the  accident  with
21 plaintiff.  The results of a urinalysis performed on O'Connor after
22 the accident with plaintiff showed that O'Connor had no drugs or
23 alcohol in his system.

24     On or about April 11, 2007, about two and one-half months
25 before this accident, O'Connor had a "Miss Out."  Salazar explains
26 that  Greyhound  places  its  drivers  on  call  (known  as  "Extra
27 Boarding"), and expects the drivers to be available when summoned
28 to come to the terminal and drive passengers when they are called

3 - FINDINGS & RECOMMENDATION/ORDER

1   by Greyhound's Dallas, Texas central processing unit.    Salazar

2   Declr. at  11.  Such calls are for extra, unscheduled work shifts.

3   A failure to answer the telephone or arrive at the terminal when

4   called for an extra shift is referred to as a "Miss Out."

5        According to Salazar, on that one occasion, O'Connor was

6   questioned by supervisor Denver Peoples for his failure to report

7   to duty when called.  Id.  Salazar knew that Peoples had questioned

8   O'Connor about the "Miss Out," but Salazar did not feel that this

9   would affect O'Connor's quality of driving.  Id.

10       In a write up of Peoples's interview regarding this one-time

11  "Miss Out," there is a section for "Employee's Explanation."  Here,

12  O'Connor apparently wrote that "[a]t times I am to [sic] fatigue or

13  have other issues that have to be taken care of."[1]

14

15       [1] For the purposes of this motion, I assume that plaintiff
16  could introduce an authenticated copy of this document.  Notably,
    in opposing defendant's summary judgment motion, plaintiff has
17  not done so.  Instead, a material fact asserted by plaintiff
    states as follows: "O'Connor admitted that he signed on a report
18  dated April 11, 2007 after his miss-out, that had this written in
    as employee's explanation: [photocopy of O'Connor's handwriting]
19  'At times I am to [sic] fatigue or have other issues that have to
    be taken care of.'  From bates DEF0550 received from defendant."
20  Pltf's Resp. to Deft's CSF at p. 3.
         Plaintiff does not include the actual document in his
21  opposition to the summary judgment motion.  Rather, in support of
    his asserted fact, he cites to the "Third Declaration of E.J.
22  Simmons" previously filed in support of his motion to file a
    second amended complaint.  See Dkt #37.  The cited declaration
23  also has no copy of the actual document.  Instead, there, Simmons
    simply states that in discovery, defendant provided an "Employee
24  Interview Record, bates DEF0550, prepared and signed by Denver
    Peoples, then a supervisor, and signed by the bus driver."
25  Simmons Third Declr. at p. 2.  Simmons further states that "It
    was dated about 2 months before the injuries to plaintiff, and
26  referred to the driver's fatigue and 'issues.'  The bus driver,
    in his deposition, identified his signature on the form."
27  Orr v. Bank of America, 285 F.3d 764 (9th Cir. 2002)
28

4 - FINDINGS & RECOMMENDATION/ORDER

1    In his own declaration, O'Connor states that when Peoples
2  questioned him about his not being available when he was supposed
3  to be at home and on call, he incurred "miss outs" because he did
4  not want to work the "extra boards" defendant wanted him to work
5  beyond his normal shifts.  O'Connor Declr. at ¶ 9.

6    On one other occasion, O'Connor was questioned by a Greyhound
7  supervisor about whether he had been drinking and driving while on
8  duty.  Id. at ¶ 8.  On May 20, 2007, Regional Operations Manager
9  Ronald Anderson wrote a report to Peoples, Kim Gann, and OSC
10  Management, noting that he (Anderson), received a call from a
11  passenger on "Sched 1300 in STF" stating that O'Connor was "falling
12  asleep at the wheel, swerving all over the road and smelled of
13  alcohol."  Exh. 8 to Hernandez Declr.  Anderson contacted the "STF
14  agency" and spoke with the supervisor in charge and asked for her
15  assessment of the driver.  Id.  He was told that the driver was
16  alert and did not seem tired at all, and there was no smell of
17  alcohol present.  Id.  Anderson asked the supervisor to put
18  O'Connor on the phone.  Id.  Anderson asked O'Connor if he was
19  feeling tired or drowsy, and O'Connor said no.  Id.  O'Connor
20

21  suggests that plaintiff may authenticate a document used to
   oppose a summary judgment motion by identifying, in a declaration
22  or affidavit, that the document was produced in discovery by the
   opposing party.  Id. at 777.  However, I know of no case allowing
23  a party to create an issue of fact without producing the actual
   document.  Here, plaintiff relies only on a quoted excerpt of the
24  document in question which he reproduces in the body of a
   memorandum, or in the assertion of a fact.  Without the tender of
25  the actual document, properly authenticated, plaintiff cannot
   rely on the statements in the document.  Nonetheless, because I
26  recommend that defendant's summary judgment motion be granted
   even when considering the statements, I assume for the purposes
27  of this motion that plaintiff could submit the entire document
   and properly authenticate it.
28

1  explained that he had hit the rumble strips on the highway because

2  of wind gusts.  <u>Id.</u>  Anderson again asked O'Connor if he was "OK to

3  continue the schedule to BOI," and O'Connor reported he felt fine

4  and had no problems continuing.  <u>Id.</u>

5      A few minutes later, Anderson received a call from another

6  driver, "Operator Allen."  <u>Id.</u>  Allen stated that O'Connor was

7  swerving a little, but Allen did not observe him falling asleep.

8  <u>Id.</u> She said that a passenger told her that they observed O'Connor

9  falling asleep and smelling of alcohol.  <u>Id.</u>  Allen, however, told

10 Anderson that she did not smell any alcohol at that point.  <u>Id.</u>

11     Anderson called back to "STF" and asked the supervisor to do

12 another assessment of the driver before releasing him to continue.

13 <u>Id.</u>  The supervisor stated again that O'Connor was alert and did

14 not appear to have any problems.  <u>Id.</u>  Anderson spoke to O'Connor

15 again and asked again if he was tired at all and if he had consumed

16 any alcohol within the last twelve hours.  <u>Id.</u>  O'Connor said he

17 was not tired and had not had any alcohol in the last twelve hours.

18 <u>Id.</u>  Anderson conferred with his national manager and they both

19 agreed to continue the schedule with the information from the

20 supervisor and O'Connor.  <u>Id.</u>

21     In his declaration, O'Connor states that when questioned, he

22 confirmed to the Greyhound supervisor that he had not been drinking

23 and it was his understanding that another Greyhound employee

24 confirmed that he did not have alcohol on his breath.  O'Connor

25 Declr. at ¶ 8.  He was allowed to continue his scheduled route and

26 he did so without incident.  <u>Id.</u>  Salazar refers to the person who

27 spoke with O'Connor (presumably Anderson, although he does not name

28 him), as a "senior Greyhound supervisor."  Salazar Declr. at ¶ 12.

6 - FINDINGS & RECOMMENDATION/ORDER

1

STANDARDS

2      Summary judgment is appropriate if there is no genuine issue

3 of material fact and the moving party is entitled to judgment as a

4 matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

5 initial responsibility of informing the court of the basis of its

6 motion, and identifying those portions of "'pleadings, depositions,

7 answers to interrogatories, and admissions on file, together with

8 the affidavits, if any,' which it believes demonstrate the absence

9 of a genuine issue of material fact."  Celotex Corp. v. Catrett,

10 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

11      "If the moving party meets its initial burden of showing 'the

12 absence of a material and triable issue of fact,' 'the burden then

13 moves to the opposing party, who must present significant probative

14 evidence tending to support its claim or defense.'"  Intel Corp. v.

15 Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

16 (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

17 Cir. 1987)).  The nonmoving party must go beyond the pleadings and

18 designate facts showing an issue for trial.  Celotex, 477 U.S. at

19 322-23.

20      The substantive law governing a claim determines whether a

21 fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors

22 Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

23 to the existence of a genuine issue of fact must be resolved

24 against the moving party.  Matsushita Elec. Indus. Co. v. Zenith

25 Radio,  475 U.S. 574, 587 (1986).  The court should view inferences

26 drawn from the facts in the light most favorable to the nonmoving

27 party.  T.W. Elec. Serv., 809 F.2d at 630-31.

28      If the factual context makes the nonmoving party's claim as to

7 - FINDINGS & RECOMMENDATION/ORDER

the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

DISCUSSION

To establish a negligent entrustment claim, plaintiff must prove that "'there was an entrustment and that the entrustment was negligent.'"  Piskorski v. Ron Tonkin Toyota, Inc., 179 Or. App. 713, 718-19, 41 P.3d 1088, 1091 (2002) (quoting Mathews v. Federated Serv. Ins. Co., 122 Or. App 124, 133, 857 P.2d 852, 857 (1993)).  There is no dispute in this case that defendant entrusted the bus to O'Connor.  The only issue is whether that entrustment was negligent.

In the absence of a special relationship between the plaintiff and the defendant, the actions by a defendant in a negligent entrustment claim are measured by a reasonable person standard. Id. at 719, 41 P.3d at 1091,  As Mathews explains, when the plaintiff does not allege that there was a special relationship with the defendant, the plaintiff must show that (1) the entrustment was unreasonable under the circumstances, (2) it caused harm to the plaintiff, and (3) the risk of harm to the plaintiff (or the class of persons to whom he belongs) was reasonably foreseeable.  Mathews, 122 Or. App. at 133-34, 857 P.2d at 857. Additionally, "an allegation that a defendant knew about a dangerous condition must be accompanied by claimed facts showing defendant's knowledge of unreasonable risk of danger." Mathews,

8 - FINDINGS & RECOMMENDATION/ORDER

1  122 Or. App. at 135, 857 P.2d at 858 (internal quotation omitted).

2      In his Second Amended Complaint, plaintiff alleges that

3  defendant knew or should have known that its driver was not able to

4  drive a bus without unreasonable risk of accident, especially late

5  at night, "and given his fatigue and personal 'issues' around the

6  date and time of the collision that occurred June 2[9], 200[7]."

7  Sec. Am. Compl. at ¶ 4; see also Id. at ¶ 1 (alleging defendant was

8  negligent in entrusting "the bus to the driver for a trip that

9  would end late at night."). Plaintiff makes no allegation of a

10  special relationship.   Thus, the reasonable person standard

11  applies.

12     Defendant argues that under the reasonable person standard,

13  plaintiff cannot show that entrustment of the bus to O'Connor was

14  negligent because defendant's actions were reasonable under the

15  circumstances and there was no foreseeability of the risk of harm

16  to plaintiff from the entrustment.  In response, plaintiff argues

17  that O'Connor's reference to fatigue as a basis for his April 2007

18  "Miss Out" created a duty on defendant to investigate a "fatigue

19  problem" with O'Connor.  Plaintiff also argues that a question of

20  fact regarding defendant's negligence is raised by its failure to

21  have a management-level supervisor interview plaintiff in person in

22  response to the May 20, 2007 passenger complaint of O'Connor having

23  alcohol on his breath.

24     Neither argument is availing.  As to the fatigue argument,

25  plaintiff's expert Tom Welch opines that based on his experience,

26  his review of documents provided in discovery by defendant, and his

27  review of deposition testimony of Salazar and O'Connor, at the time

28  O'Connor noted fatigue as one basis for his April 2007 "Miss Out,"

9 - FINDINGS & RECOMMENDATION/ORDER

1    "there was already a pattern and management took no action to have
2    the fatigue issue looked into and corrected." Welch Declr. at ¶
3    10.    He then states that defendant's failure in this regard was
4    negligent. Id. He further opines that there is a duty to remove
5    a fatigued driver from service. Id. at ¶ 11.

6         No evidence in the record reveals the cause of the June 29,
7    2007 accident.  The only evidence regarding the accident is that it
8    occurred on June 29, 2007, and that O'Connor turned across oncoming
9    traffic while headed south on NW Broadway in Portland.  There is no
10   affirmative statement of the time of day, or night, that the
11   accident occurred, although Salazar states that after the accident
12   he was awakened by a phone call from one of the shift managers
13   alerting him to the collision.  Salazar Declr. at ¶ 13.  There is
14   no evidence regarding when O'Connor started his shift, how long he
15   had been driving, or how much sleep he had before driving.  Thus,
16   there is no factual basis upon which a reasonable juror could
17   conclude that driver fatigue played any role in the collision.
18   O'Connor's fatigue or falling asleep is not alleged against either
19   defendant.

20        Welch's statement about a "pattern" which should have alerted
21   defendant to a "fatigue issue" is nothing more than speculation,
22   not reasonably based on facts in the record.  While Welch recites
23   a few other alleged complaints about O'Connor's driving, there are
24   no facts suggesting that fatigue was an issue in any of these
25   events.[2]  No facts show a pattern of fatigue-related incidents and

26

27

28        [2]  There are also no documents submitted evidencing any of
     these alleged complaints.

10 - FINDINGS & RECOMMENDATION/ORDER

no facts demonstrate a fatigue problem.  The only fact is a single incident, two and one-half months before the accident at issue in this case, in which O'Connor recited fatigue as one reason why he did not respond to a call for <u>extra</u> shifts.  This creates no issue regarding O'Connor ever having driven while fatigued.  In fact, it most reasonably suggests just the opposite:  he did not want to drive an extra shift because he was concerned about fatigue.  No reasonable juror could conclude, based only on the April 11, 2007 reference to fatigue as one cause for a "Miss Out," that defendant had a duty to investigate further whether O'Connor drove regular shifts while fatigued.  Thus, Welch's opinion that defendant was negligent in not investigating an alleged fatigue problem does not create an issue of fact precluding summary judgment because the facts in the record simply do not support it.

In <u>Achey v. Crete Carrier Corp.</u>, No. 07-cv-3592, 2009 U.S. Dist. LEXIS 44353, at *18 (E.D. Penn. Mar. 30, 2009), the court considered a summary judgment motion regarding whether the evidence supported a punitive damages award in a negligent entrustment case as a matter of law.  While the context of the court's analysis is distinguishable because it considered the standard required to establish punitive damages as opposed to the underlying liability, the court's analysis of the proferred expert's testimony is relevant.

The issue concerned the notice to the defendant of a fatigue problem caused by the driver's documented sleep apnea.  The court noted that the driver had been involved in several accidents.  <u>Id.</u> at *17.  But, the court explained, all of the incidents appeared to be minor and involve negligent driving while the driver was fully

11 - FINDINGS & RECOMMENDATION/ORDER

1   alert.  Id.  Thus, the court concluded, the incidents could not

2   provide the defendant with sufficient notice that the driver had a

3   predisposition to falling asleep at the wheel.  No other incident

4   involved driver fatigue.

5       The court dismissed the plaintiff's expert's testimony linking

6   a prior citation for weaving to a problem of driver alertness, as

7   speculation.  Id. at *19.  There was no other evidence linking any

8   prior citations to fatigue.  Id.

9       I agree with defendant that as in Achey, plaintiff here fails

10  to create an issue of fact regarding medical and/or fatigue issues

11  through Welch's opinions and conclusions which amount to nothing

12  more than speculation.  In summary, as to the fatigue issue,

13  plaintiff does not allege in his Second Amended Complaint that

14  fatigue played a role in causing the accident.  Plaintiff fails to

15  submit any evidence in the summary judgment record that fatigue was

16  a cause of the accident.  Plaintiff fails to create an issue of

17  fact regarding the cause of the accident being fatigue.  Plaintiff

18  further fails to create an issue of fact that defendant had any

19  duty to investigate an alleged fatigue problem based on O'Connor's

20  single reference, two and one-half months before the accident, in

21  a different context, to being too fatigued to take on extra shifts.

22  Thus, plaintiff fails to create an issue of fact in opposition to

23  the negligent entrustment claim based on the issue of fatigue.

24      As to any alcohol-related evidence, the record shows only the

25  single unsubstantiated passenger complaint in May 2007.  Plaintiff

26  does not allege in his Second Amended Complaint that alcohol was a

27  cause of the June 29, 2007 accident.  No evidence in the summary

28  judgment record suggests that alcohol was a factor in the accident.

1   In fact, as noted above, the urinalysis performed on O'Connor after
2   the accident detected no drugs or alcohol in his system.    No
3   evidence suggests that O'Connor had any kind of ongoing alcohol
4   problem.    Plaintiff fails to create an issue of fact regarding
5   alcohol being a cause of the accident.

6       Additionally, Welch's opinion that defendant's failure to have
7   a management-level employee personally interview O'Connor after
8   defendant received the passenger complaint in May 2007, does not
9   create an issue of fact precluding summary judgment on the
10  negligent entrustment claim.    First, Welch cites no authority
11  establishing an "in person" interview as a requirement or industry
12  standard.    Second, even assuming such a protocol applied, with no
13  evidence that alcohol was a factor in the accident, Welch's opinion
14  about the negligence of defendant's investigation practices is not
15  relevant to the negligent entrustment claim.    As noted above, there
16  must be facts showing that defendant knew of a dangerous condition
17  which created an unreasonable risk of harm should defendant entrust
18  the driver with the bus.    Plaintiff must show a question of fact
19  with respect to this risk of harm actually causing the accident
20  which allegedly injured plaintiff.    As stated above, plaintiff
21  fails to do so.    No facts in this record demonstrate that the
22  entrustment in this case was unreasonable as a result of defendant
23  failing to conduct an in-person interview following a passenger
24  complaint of suspected alcohol use, when defendant did investigate
25  the complaint through other means, and when alcohol was not a
26  factor in the accident.    No reasonable juror could conclude that
27  any risk of harm to plaintiff was reasonably foreseeable.
28  / / /

13 - FINDINGS & RECOMMENDATION/ORDER

1

CONCLUSION

2    I recommend that defendant's motion for summary judgment (#43)

3 be granted.  I deny defendant's motion to strike (#62) as moot.

4

SCHEDULING ORDER

5    The Findings and Recommendation will be referred to a district

6 judge.  Objections, if any, are due December 15, 2009.  If no

7 objections are filed, then the Findings and Recommendation will go

8 under advisement on that date.

9    If objections are filed, then a response is due December 29,

10 2009.  When the response is due or filed, whichever date is

11 earlier, the Findings and Recommendation will go under advisement.

12    IT IS SO ORDERED.

13              Dated this __30th__ day of November____, 2009.

14

15

16                               /s/ Dennis James Hubel_____
_____  Dennis James Hubel
17                               United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

14 - FINDINGS & RECOMMENDATION/ORDER